**IN THE UNITED STATES DISTRICT COURT FOR THE**
**WESTERN DISTRICT OF MISSOURI**
**WESTERN DIVISION**

| | | |
|---|---|---|
| MONIQUE D. EVANS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:17-cv-00497-NKL |
| | ) | |
| FORD MOTOR COMPANY and | ) | |
| FRANK ROGERS, | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER**

Pending before the Court are a motion by Defendants Ford Motor Company ("Ford") and

Frank Rogers to dismiss (Doc. 6) and a motion by Plaintiff to remand (Doc. 8). For the reasons

set forth below, the motion to remand is denied and the motion to dismiss is granted.

**I.      Background[1]**

Ms. Evans is a former employee of Ford. According to her petition, Mr. Rogers

terminated her employment with Ford effective November 14, 2015 because of her pregnancy.

On January 25, 2016, after Ms. Evans complained to union representatives that the termination

was discriminatory, Mr. Rogers offered to reinstate her under the following conditions: she

would remain on probation for twelve months and would forfeit all backpay and future bonuses.

When Ms. Evans asked to discuss the offer with a union representative, Mr. Rogers rescinded the

offer to reinstate her.

On February 9, 2016, Plaintiff filed *pro se* a Charge of Discrimination with the Equal

Employment Opportunity Commission, alleging discrimination on the basis of sex. She

---

[1] At the motion to dismiss stage, all of Plaintiff's allegations are accepted as true and construed in the light most favorable to her. *See Stodghill v. Wellston Sch. Dist.*, 512 F.3d 472, 476 (8th Cir. 2008).

explained that, after she took maternity leave due to pregnancy complications, Ford terminated her effective November 14, 2015.  She stated, "[O]n or about January 23, 2016, I was told by my union representative that I could have my job back with conditions.  I had to agree to 12 months' probation and forfeit all my bonuses."  She expressed the belief that she was "discharged and denied [her] bonuses" because of her pregnancy.  The charge was dated and time-stamped February 9, 2016, more than two weeks after Mr. Rogers made and then revoked the conditional offer of reinstatement.

On June 16, 2016, the Missouri Commission on Human Rights (the "MCHR") issued to Ms. Evans a Notice of Right to Sue (the "First RTS Notice"), notifying her that it had decided to terminate all proceedings related to the First Charge.  The notice specified in bold, capitalized letters, "**IF YOU DO NOT FILE A CIVIL ACTION IN STATE CIRCUIT COURT RELATING TO THE MATTERS ASSERTED IN YOUR COMPLAINT WITHIN 90 DAYS OF THE DATE OF THIS NOTICE, YOUR RIGHT TO SUE IS LOST.**"  The notice also explained that "[n]o person may file or reinstate a complaint with the MCHR after the issuance of a notice under this section relating to the same practice or act."

Plaintiff did not file suit within 90 days of the First RTS Notice.

On July 20, 2016, Plaintiff filed a second Charge of Discrimination with the MCHR.  The second charge named Mr. Rogers, in addition to Ford, as a respondent and complained not only of sex discrimination, but also of retaliation for Ms. Evans' prior complaints about sex discrimination.  The second charge purported to address "new discriminatory incidents," but like the first charge, described Ms. Evans' termination on November 14, 2017, her January 23, 2016 conversation with a union representative, and Ford's January 2016 offer to reinstate Ms. Evans

on the conditions that she submit to probation for twelve months and waive her rights to backpay and future bonuses.

On February 27, 2017, the MCHR issued Plaintiff a Notice of Right to Sue (the "Second RTS Notice") in connection with her second charge.

On May 8, 2016 (70 days after the Second RTS Notice was issued), Ms. Evans filed her Petition against both Ford and Rogers in Clay County Circuit Court.

On June 16, 2017, Defendants removed this action from state court on the basis of diversity jurisdiction under 28 U.S.C. § 1332, asserting that Ms. Evans joined Mr. Rogers, a fellow Missouri citizen, solely to defeat federal diversity jurisdiction. Ms. Evans moved to remand this action to state court. Ford moved to dismiss the complaint.

## II.    Discussion

### a)  Motion to Remand

Ms. Evans insists that defendant Rogers' Missouri citizenship precludes diversity jurisdiction and requires remanding the proceedings to state court. However, as discussed below, Ms. Evans' claims against both defendants fail as a matter of law. As such, her joinder of Mr. Rogers is fraudulent and does not deprive the Court of jurisdiction. *See Anderson v. Home Ins. Co.*, 724 F.2d 82, 82 (8th Cir. 1983) ("Joinder designed solely to deprive federal courts of jurisdiction is fraudulent and will not prevent removal. Fraudulent joinder exists if, on the face of plaintiff's state court pleadings, no cause of action lies against the resident defendant.") (citation omitted).

### b)  Motion to Dismiss

Section 213.111.1 of the Revised Statutes of Missouri requires one alleging unlawful discriminatory practices in violation of the Missouri Human Rights Act (the "MHRA") to file

suit within ninety days of the issuance of a right-to-sue notice from the MCHR. *See* Mo. Rev. Stat. § 213.111.1. ("Any action brought in court under this section shall be filed within ninety days from the date of the commission's notification letter to the individual . . . ."). The statute also precludes filing or reinstating with the MCHR after the issuance of a right-to-sue notice a complaint "relating to the same practice or act." *Id.*

Ms. Evans concedes that she failed to file suit within 90 days of receiving her First RTS Notice. However, she argues that the time period for her to commence an action began to run on February 27, 2017, when she received the Second RTS Notice. Ms. Evans insists that this action is timely because she filed suit within 90 days of that date.

Defendants argue that the Second RTS Notice did not re-start the clock for Ms. Evans' lawsuit because the charge upon which that notice was based related to the same acts that were identified in the first charge and addressed in the First RTS Notice. Ms. Evans contends that the second charge concerned a "separate discriminatory incident." She emphasizes that the second charge, unlike the first charge, named Mr. Rogers as an additional respondent and also alleged that unlawful retaliatory intent was a factor in her termination.

The Court concludes that the second charge relates to the same practices and acts described in the first charge. Both charges discuss the same acts: Ms. Evans' termination, her January 23, 2016 meeting with a union representative, and Ford's conditional offer of reinstatement. *Compare* first charge, Doc. 1-3 ("I was discharged on or about November 14, 2015 because I failed to respond to the letter.") *with* second charge, Doc. 1-2 at 14 ("On or about November 14, 2015, I was terminated for the stated reason that I failed to respond to the 'quit letter.'"); *compare* first charge, Doc 1-3 *with* second charge, Doc. 1-2 at 14 (both describing January 23, 2016 conversation with union representative); *compare* first charge, Doc. 1-3 ("I was

4

told by my union representative that I could have my job back with conditions.  I had to agree to 12 months' probation and forfeit all my bonuses.") *with* second charge, Doc. 1-2 at 14 ("On or about January 25, 2016 . . . Mr. Rogers told me that I could have my job back if I agreed to be on a 12-month probationary period and forfeited all future bonuses and back pay.").  Although the second charge presents a new legal theory for adverse employment actions of which Ms. Evans had already complained, the facts remain the same.  The fact that Ms. Evans described learning of the conditional offer of reinstatement from different people in each of the charges is immaterial.  The underlying act—Ford's offer to reinstate Ms. Evans if she agreed to 12 months' probation and to forgo her backpay and future bonuses—was the same.  There were no "new" or "separate" discriminatory incidents in the second charge.

Because the second charge related to the same acts described in the first charge, the second charge was unauthorized under Section 213.111 and therefore can have no effect in this action.

Ms. Evans argues that the Second RTS Notice was valid and operative because the MCHR issued it; the MCHR must have concluded implicitly that it had jurisdiction and authority to issue the notice.  But the Second RTS Notice, unlike the First RTS Notice, expressly states in bold print that "**determinations of jurisdiction[] ha[d] not been completed**."  Doc. 1-2 at 17.  In any event, the MCHR does not have the authority to assume jurisdiction over a second complaint concerning incidents with respect to which the MCHR has already issued a right-to-sue notice.  Section 213.111 requires the MCHR to "terminate all proceedings relating to" a charge after the issuance of a right-to-sue notice, and prohibits any person from reinstating a complaint after issuance of the notice.  § 213.111.1.  The statute also specifies that MCHR "may not at any other time or for any other reason issue a letter indicating a complainant's right to

bring a civil action." *Id.* The MCHR cannot assume powers greater than those vested in it by statute. *See Farrow v. St. Francis Med. Ctr.*, 407 S.W.3d 579, 588 (Mo. en banc 2013) ("As a creature of statute, an administrative agency's authority is limited to that given it by the legislature."). Thus, MCHR's issuance of the Second RTS Notice does not save Ms. Evans' claims.

Nonetheless, Ms. Evans urges the Court to be "very forgiving" in interpreting the MHRA's procedural requirements. She notes that the Supreme Court of Missouri has held that a plaintiff need not timely file an MCHR charge in order to file suit subsequently under the MHRA. *See Farrow*, 407 S.W.3d at 588. However, *Farrow* dealt with the timeliness of filings with the MCHR; the decision turned on the fact that Section 213.111 does not require a plaintiff's MCHR filing to be timely. In contrast, Section 213.111 expressly requires a plaintiff to bring suit within 90 days of a right-to-sue notice, as the court in *Farrow* recognized. *See id.* at 591 (noting that filing suit "within ninety days of the issuance of the right to sue letter" is among the "only requirements imposed by Section 213.111" to file suit under the MHRA).

Thus, the plain language of Section 213.111 compels the conclusion that the Second RTS Notice did not have the power to re-start the clock for Ms. Evans' claims. Her failure to file suit within 90 days of the First RTS Notice renders this action untimely as to both defendants. The action therefore must be dismissed.

**III.     Conclusion**

For the reasons set forth above, Plaintiff's motion to remand is denied and Defendants'

motion to dismiss is granted.

/s/ Nanette K. Laughrey
NANETTE K. LAUGHREY
United States District Judge

Dated:  September 18, 2017
Jefferson City, Missouri